WOOD & WOOD, Respondents, v. STEAMBOAT FLEETWOOD, Appellant.

1. Where a dray ticket, containing an acknowledgment of the receipt of goods to be transported, also a statement of the rate of freight thus—" 30 cents per 100 lbs.," is signed by a clerk of a steamboat; *held*, in a suit against the boat, that such a dray ticket is not conclusive as to the rate of freight; that the words " 30 cents per 100 lbs." *may be shown to have been inserted by fraud, mistake or surprise*, and consequently did not express the intention of the parties.

Wood v. Steamboat Fleetwood.

*Appeal from St. Louis Court of Common Pleas.*

This has heretefore been in this court, and is reported in 19 Mo. 529. The following instruction, to the giving of which the defendant excepted, was given to the jury by the court:

" 6. If the rate of freight was inserted in a dray ticket, and said ticket was afterwards signed by the clerk of the defendant, then the defendant is bound by said contract, as to the freight on the articles named in said ticket, unless the defendant has shown to the satisfaction of the jury that said clerk had no authority to make said contract for the defendant, and that the plaintiffs knew that he had no such authority."

The other facts of the case sufficiently appear in the opinion of the court.

*J. A. Kasson,* for appellant.
*Barrett,* for respondents.

LEONARD, Judge, delivered the opinion of the court.

This suit was for the nondelivery of goods under an alleged contract of affreightment from Pittsburgh to St. Louis, at thirty cents per hundred, and the decision of the case turned upon the question whether or not thirty cents was the agreed rate. The boat insisting that no such agreement had been made, refused to deliver the goods, unless the customary rate was paid, which, it was insisted, exceeded the alleged rate ; and the owners tendering what they said was the contract price, declined paying more, and brought this action. Upon the trial, the plaintiff gave in evidence two dray tickets, signed by the boat's clerks. In the first were found, immediately under the heading, " Packages and weights," the words, in pencil mark, " at 30 cents per 100 pounds," but which were omitted in the other. The tickets were printed blanks in book form, with two columns, headed with the words, " marks" and " packages and weights," and contained a printed acknowledgment of the receipt of goods by the boat, described under appropriate heads. They are used,

it seems, to discharge the draymen and to charge the boat temporarily with the goods, until the formal bill of lading can be made out from them, and it is unusual to insert in them the rate of freight.

It was insisted in proof, on the part of the boat, that the pencilled words were not upon the paper when the clerks signed it, and if they were, that the fact was not brought to their attention, and escaped their observation. The instructions given and refused declare the ticket to be conclusive evidence of the rate of freight, and exclude all parol evidence that the words were inserted by fraud, mistake or surprise, and did not express the intention of the parties. We are not of that opinion, and therefore reverse the judgment, that the cause may be tried under the view of the law now taken. When, in order to render a contract obligatory, the law requires, or the parties themselves agree, that it shall be reduced to writing, there is no valid contract until the required instrument has been executed, and when it is executed, it becomes the exclusive evidence of the *whole contract*, and is not open to contradiction by parol evidence ; and this rule results from the necessity of it, in order to execute the intention both the law-givers and the parties had in view in requiring the contract to be put in writing. And where, without any previous agreement to that effect, persons have entered into a written contract, in such terms as impart a perfect legal engagement, it is *conclusively presumed* that the whole contract is embraced in the writing, and the same rule, as to the exclusion of the parol evidence, applies as in the other cases. It would seem, then, to be an abuse instead of a just application of the rule, which is undoubtedly one of great practical wisdom, to apply it to the loose, temporary written admission of a single term to be inserted in a contract which parties are about to enter into. A written obligation, importing a perfect, complete transaction, while it stands, is the exclusive evidence of the terms of the bargain ; but even such an instrument may be reformed by a direct proceeding for that purpose, when, by fraud or mistake, it fails to express the real

contract of the parties. But certainly a bill in equity need not be resorted to in order to reform a written admission not imparting a complete legal engagement, and accordingly it was said by the court, in Fuller v. Crittenden, (9 Conn. 406,) "The true view of this subject seems to be, that such circumstances as would lead a court of equity to set aside a contract, such as fraud, mistake or surprise, may be shown at law to destroy the effect of a receipt;" and this principle was acted upon in Brown v. Bennett, (1 Camp. 394,) where a receipt obtained by fraud or misrepresentation was held to be a nullity; and in Fairmaner v. Budd, (7 Bing. 574,) where proof was received that the signer of the receipt was illiterate, and that the receipt was not drawn according to the authority. The doctrine of the New York courts, however, in relation to receipts, goes beyond this (Southwick v. Hayden, 7 Cow. 335); and it is laid down in 1 Greenl. Ev. § 305, that, "so far as the receipt goes, only to acknowledge payment or delivery, it is *prima facie* evidence of the fact, and not conclusive;" and we think this latter doctrine is applicable to this transaction, not only in reference to the fact of the receipt of the malt, but also as to the admission in pencilled words, "at 30 cents per cwt." The judgment is accordingly reversed, and the cause remanded.