ISADORA A. SPENCER *vs.* THOMAS W. D. CLARKE, EXr.

PROVIDENCE—APRIL 29, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Trusts. Revocation of Trust. Actions. Money Had and Received.*

Plaintiff, in the employ of defendant's testator, allowed the latter to retain her wages upon his promise to invest them for her. The money was not invested by testator, either in the name of plaintiff or in his own name as trustee for her, but was mingled with his funds and invested, if at all, as his own money. Prior to the death of testator, a balance was agreed upon by the parties except as to an item of interest, and testator promised to settle with plaintiff on that basis provided she would accept a mortgage in part payment. Plaintiff refused, and demanded payment in full in money:—

*Held,* that the prior relationship between the parties had been that of trustee and *cestui que trust.*

*Held,* further, that this had been terminated by the statement of account between them, and, the demand for immediate settlement having been denied, plaintiff was entitled to maintain an action at law for the recovery of the amount agreed upon.

ASSUMPSIT for money had and received. Heard on petition of defendant for new trial, and petition denied.

TILLINGHAST, J. This is an action of assumpsit, and is brought to recover the sum of $980, with interest from Jan-

uary 1, 1893, for services rendered by the plaintiff to the defendant's testator, Henry W. Tiffany, in the capacity of housekeeper.

The facts in the case are substantially as follows: The plaintiff went to live with Mr. Tiffany in August, 1887, as his house-keeper, and remained in his service until about the 20th of August, 1896. She was to receive as compensation for her services the sum of four dollars per week. This amount was regularly paid to her until December 27, 1887, at which time an agreement was entered into between her and Mr. Tiffany whereby he was to retain the wages which should become due to her—except so much thereof as she actually needed—and invest them for her so that she should receive six per cent. interest thereon. Under this agreement Tiffany retained plaintiff's wages until January 1st, 1893, when, at the plaintiff's instance, she again received her pay regularly as at the first.

The plaintiff's claim that she rendered the services for which she now claims compensation, and that she has not been paid therefor, is not disputed.

In addition to the plea of the general issue, the defendant pleaded, (1) the general statute of limitations; and (2) the statute of limitations as to actions against executors. To these special pleas the plaintiff replied, and joined issue.

The only defence interposed was based upon said statutes of limitation.

The jury returned a verdict in favor of the plaintiff for the sum of $1,516, and also found, specially, "that on the 2nd day of July, 1901, the defendant executor did *not* deny the validity of the plaintiff's claim;" and the case is now before us on the defendant's petition for a new trial on the grounds, (1) that the verdict is against the law and the evidence; and (2) that the presiding justice erred in refusing to charge the jury as requested by defendant.

The testimony shows that Mr. Tiffany agreed to keep the money which the plaintiff earned and invest it for her, and that this arrangement was made at his suggestion. The plaintiff says: "Mr. Tiffany asked me what I did with my money. He talked to me as he would to a child of his own, and I told him

I spent my money as fast as I got it." . . . "I said I did not know of any other way of saving it except the bank, and that only brought four per cent.; and I did not put it there and did not think I would. He encouraged me to save it, as he had authority to talk that. He was always talking about saving money. I asked him how to save my money to get benefit from it, and he said to put it in mortgages and let it out. I asked him if he would not do it for me, and he said after awhile —he did not say he would at first—but after we talked it some he said he would do so if I wished. I said I was not any business woman, and he understood it better than I did, and if he would do so I would be glad to have him. I took him to be a friend of my father. He said he was interested in me because he thought a great deal of father, and under those circumstances he would do it. He kept my wages from that time on, with the exception of three or four payments, money that he let me have when I wanted more than what I had."

This condition of affairs continued until the first of January, 1893, after which, upon plaintiff's request, her regular wages were again paid to her by said Tiffany. She continued in his employ at the same weekly compensation until about the 20th of August, 1896, making a total of a little over nine years' service.

No demand was ever made upon Mr. Tiffany for any settlement regarding the money which he had retained out of her wages for investment, as aforesaid, until some time in August, 1896. She then had a brief interview with him, on the street, relating to the settling of that account. She asked him when she could see him to settle this account, and he replied: "I will try to come up, or will you come down?" meaning by the latter part of the answer, when would she come down to his house at Crompton village. A short time afterwards she met him in Crompton village and had some conversation with him about the matter, and he wanted her to go to the house and see if they could not have a settlement; but she told him she would rather not go to the house, but when he was in the city to let her know or to come to the house (her house) "and we would settle."

Two or three months after that Mr. Tiffany went to the plaintiff's house on Burrington street, in the city of Providence, and had a conversation relating to a settlement of said account. With regard to this interview the plaintiff testifies: "He wanted to know if I would take a mortgage in part payment for the settlement of the bill, and I told him that I did not think I could; that I did not understand the business—I knew nothing about it—and the mortgage that he wished me to take he had a great deal of trouble with, himself, and it was something that I did not wish to take on my hands. I wished a cash settlement with him. He demurred, and did not want to pay me in cash, but wanted me to take a mortgage in part payment. It was a small mortgage—I don't know what the amount was —on a cottage in Natick village." At this interview a bill was presented to Mr. Tiffany for the amount which the plaintiff claimed to be due to her, with interest thereon, to which bill he made no objection, saying that the dates were correct and the amount was also correct, but that the interest was more than it should be.

No settlement was effected, however, but he said he would come in again. In the latter part of 1897, or the first part of 1898, Mr. Tiffany again went where the plaintiff was living and had an interview with her regarding the settlement. It was quite similar to the one last referred to. He did not want to pay the full amount in cash, but wanted her to take a mortgage in part payment. He found no fault with any part of the plaintiff's claim except as to the item of interest, and expressly admitted that all the amounts, dates, and wages were correct as stated. His only objection was to the amount of interest, and to paying the claim in full in cash. "He said he would see me again and make it all right, and we would come to a settlement the next day he saw me." This was the last time that the plaintiff saw Mr. Tiffany before his death.

During the time that Mr. Tiffany was withholding the plaintiff's wages under the arrangement above referred to, she had several familiar talks with him about the matter, in which she says: "He would talk about it, and tell me how much better it was for me to have my money at interest. But he never

told me how he had invested it. He said, from time to time, how I was saving my money and how much better it would be for me. That I would have something in my old age to take care of me."

After 1893, when the plaintiff had commenced to receive her wages again, she also had conversations with him, and he said he was sorry that she was not still continuing to let him have her wages and save up more; to which plaintiff replied that she had use for her money at that time. Her mother had died, and she had a good many expenses and needed the money which she drew and used up. The total amount of wages earned during the period covering the time that Mr. Tiffany retained them from the plaintiff was about $980, after deducting the payments made to her during said time.

The plaintiff testifies that she never had any talk with Mr. Tiffany as to what he was doing with the money—that is, as to the way he invested it—but that he told her he had invested it, and it was drawing good interest. In reply to the question by defendant's attorney, in cross-examination, "And you never asked him for any of the income from your money?" she answered "I never did. He would say it would be all right. 'It is doing nicely,' whenever we talked about it. I knew he had several mortgages, and I supposed he had invested my money in that way, although I did not know it. Q. He always assured you it was invested in good securities? A. Yes sir; he told me time and time again it would be all right, and it was all right with me."

At the first hearing in this Division, on the defendant's petition for a new trial, the arguments of counsel upon both sides were confined to the questions raised by the pleas of the statutes of limitation, the contention of the defendant being that the claim in suit was barred by the general statute of limitations applicable to actions of assumpsit, and also that the action was not commenced against the executor within the special period allowed by law for the commencement of actions against executors; while the contention of the plaintiff, on the contrary, was that the claim had been taken out of the general statute of limitations by a new promise on the part of defend-

ant's testator, and that the action against the executor was commenced within the special time limited therefor by the statute.

Upon considering the testimony, a summary of which is above set forth, the court suggested to counsel that it seemed to show that Henry W. Tiffany, the defendant's testator, was a trustee for the plaintiff in the care, management, and investment of her wages; and that, if this were so, the statute of limitations as to him did not commence to run until a breach of the trust on the part of said Tiffany occurred, namely, until demand was made upon him by the plaintiff for a settlement of the account in 1896, and a refusal on his part to comply therewith.

In pursuance of said notice, and upon the suggestion of the court, the case has since been reargued by counsel upon the point thus raised.

(1) Counsel for defendant argues that the testimony discloses either (a) a trust relation, or (b) an agreement by Tiffany to invest the plaintiff's money. And, as to the first point, "if the relation between the plaintiff and Tiffany was that of trustee and *cestui que trust*, the present action cannot be maintained, since there was no repudiation of the trusteeship by Tiffany which would enable the plaintiff to sue her trustee at law." In support of this contention he cites from Perry on Trusts, 5th ed. § 843, as follows: "Unless some legal debt has been created between the parties, or some engagement, the non-performance of which may be the subject of damages at law, a court of equity is the only tribunal to which he can have recourse for redress. An action at law for money had and received will not lie against a trustee while the trust is still open." This is doubtless good law, but so also is the remainder of the text of the last proposition which immediately follows and forms a past thereof, namely: "But if a final account is settled, and a balance struck, an action may be maintained." That is just the case here. A balance had been struck and agreed upon between the plaintiff and Tiffany, except as to the item of interest, and he had promised to settle with her on that basis, provided only that she would accept of a certain mortgage or

of certain mortgages held by him in part payment of the amount agreed to be due her. This proposition she refused, not knowing about the value of the mortgages, and wishing to be paid in money. She therefore demanded payment in full in money. We think the relationship of trustee and *cestui que trust* between the parties was terminated as to the subject-matter of this action by their own arrangement thus made for a settlement, and that nothing remained to be done except for Tiffany to pay over the money which he acknowledged to be due and owing to her. She had made her demand, and Tiffany had acquiesced in the practical correctness thereof; and the trust relations between them were thus ended.

That such was the result of said arrangement seems to be well sustained by the following language used by Wightman, J., in delivering the opinion of the court in *Topham* v. *Morecraft*, 8 Ell. & Bl. p. 983: "It seems to me impossible to maintain that if a trustee in possession of trust money enter into an account with his *cestui que trust*, and thereupon expressly state an account, and acknowledge that he has a fund in hand applicable to the claim made on him, he does not thereupon put an end to his character of being a trustee merely, and become liable as a debtor to an action at law brought against him in his personal capacity."

*Roper* v. *Holland*, 3 Ad. & E. 99; *Allen* v. *Impett*, 8 Taunt. 263; and *Bartlett* v. *Dimond*, 14 M. &. W. 49, are to the same general effect. See also *Coster* v. *Murray*, 5 Johns. Ch. 522; *Judah* v. *Dyott*, 3 Blackf. 324.

In *Buttrick* v. *King*, 7 Met. 20, Shaw, C. J., in referring to an action at law to recover certain trust estates or trust property, says: "But when it remained wholly in money, in the hands of the defendant as administrator of the widow, an action for money had and received,—which is in the nature of a bill in equity,—when nothing remains to be done but the payment of money, may be maintained."

In the case at bar we must infer from the testimony that the trust property remained wholly in money; that this money had never been invested by Tiffany, either in the name of the plaintiff or in his own name as trustee for her, but that it had

been mingled with his own funds and invested, if invested at all, as his own money. When the plaintiff made demand upon him for her money, therefore, such demand amounted to a revocation of the trust and entitled her· to immediate payment; which, being denied, entitled her to maintain an action at law for the recovery of the amount agreed upon, as aforesaid.

If Tiffany had in fact invested her money in a mortgage or in other securities, either in her name or in his own name as trustee for her, as he should have done, and had offered to turn over to her such securities instead of paying her the money when she demanded the same, of course she would have been obliged to accept the same, as this would have amounted to a fulfillment of the trust on his part. But he did not, and evidently could not do so, for the reason already given; and hence was clearly in default in his trust relations with the plaintiff. We can see no reason, therefore, why the action was not properly brought.

In *Johnson* v. *Johnson*, 120 Mass. 465, while it was held to be well settled that a *cestui que trust* cannot bring an action at law against a trustee to recover for money had and received while the trust is still open, yet the court said that "when the trust has been closed and settled, the amount due the *cestui que trust* established and made certain, and nothing remains to be done but to pay over money, such an action may be maintained."

The case of *Campbell* v. *Whoriskey*, 170 Mass. 63, is very similar to the case at bar. There the plaintiff went into defendant's service in 1869 and saved money from her wages. Having confidence in the defendant, and knowing him to be a man of considerable property, she placed various sums of money in his hands from time to time, of which he kept· an account in a book. When she first gave him money he asked her to let him have it "sooner than to bank it." He promised to give her bank interest and to keep the money safe for her until she wanted it. In 1890 she demanded the money from him, but this demand was refused; whereupon, in February, 1895, she brought suit to recover the same, and the question raised was whether her claim was barred by the statute of limitations.

The court held that the defendant was not liable to a suit for the money earned and turned over to the defendant until the arrangement under which he was retaining and using it was terminated by the plaintiff. "His promise," said the court, "was not like that of the maker of a promissory note payable on demand, but was an undertaking to pay within a reasonable time after a demand. Her cause of action in the sense of a present right to maintain a suit did not accrue until she had demanded the money." The court further said: "The plaintiff's deposit of her money was not an ordinary loan. While it was undoubtedly contemplated that the defendant might use the money as his own, and that the relation of debtor and creditor should grow out of the transaction, an element of trust entered in, indicating an intention that the defendant should hold it for an indefinite time in the future, as much for the safety and convenience of the plaintiff as for the pecuniary benefit of either of them. Their conversation shows that in some respects. he was to stand in the place of a savings bank in receiving and keeping the money. A depositor in a savings bank need not call for his money within six years." The court held that the plaintiff was entitled to recover.

The trust relationship in the case at bar is stronger than the one which appeared in that case, because here the defendant's testator was not simply to keep the money, or "bank it and pay interest on it," as was the agreement in that case, but he agreed to safely invest it for the plaintiff, which he failed to do.

In addition to the cases above cited, see *Davis* v. *Coburn*, 128 Mass. 377; *Goodell* v. *Bank*, 63 Vt. 303; *White* v. *Sheldon*, 4 Nev. 280; *Baker* v. *Joseph*, 16 Cal. 173; *Trust Co.* v. *Manchester*, 16 R. I. 308; *Blackmar* v. *McLoughlin*, 21 R. I. 487; Wait's Act. and Def. vol. 7, p. 238, section 11.

As what we have above said practically covers both points (a.) and (b) of the defendant's argument, there is no occasion for a particular discussion of the latter point.

As to the point made by defendant, that the action was not commenced against the executor within the time limited for the bringing of such action, it is sufficient to reply that the

special finding of the jury upon that point, in favor of the plaintiff, is sustained by the evidence.

The petition for new trial is denied, and the case remanded for· judgment on the verdict.

*Charles E. Salisbury and James C. Collins, Jr.,* for plaintiff.
*Job S. Carpenter and Edwards & Angell,* for defendant.